JAMES V. MORAN. PLAINTIFF-APPELLANT, v. CAMDEN TRUST COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.

Argued February 4, 1942—Decided April 23, 1942.

For the plaintiff-appellant, *James V. Moran* (*John C. Blandy,* of counsel).

For the defendant-respondent, *Joseph Beck Tyler.*

The opinion of the court was delivered by

THOMPSON, J. This is an appeal from a judgment entered upon the granting of a motion for nonsuit at the close of the plaintiff's case.

The plaintiff was indebted to the defendant upon his promissory note in the sum of $32,800, dated April 5th, 1934, secured by collateral including 100 shares of stock of American Telephone and Telegraph Company. On November 21st,

1934, plaintiff was adjudicated a bankrupt, and a trustee was appointed. The trustee made a report, dated April 17th, 1935, in which he stated that the bankrupt estate had no equity in the stock pledged as collateral over and above the amount due on the note, and that at that time the collateral was not worth the amount due on the claim for which it was pledged. He further stated that it would be to the advantage of the bankrupt estate to surrender the collateral to the bank upon its agreeing to withdraw its claims which had been filed in the bankruptcy proceedings. An order was entered in the bankruptcy proceedings on April 17th, 1935, in which the report of the trustee was approved, and providing that he be permitted "to surrender all his right, title and interest in and to the collateral pledged with the Camden Safe Deposit and Trust Company, and that the claims of the Camden Safe Deposit and Trust Company and the West Jersey Trust Company be and hereby are withdrawn from the files, and that no dividend be paid to either of them."

It appears that the trustee in bankruptcy did not, subsequent to the order entered April 17th, 1935, make any formal written assignment of the trustee's title in said stock, which title, if he had any, was only in the equity in the pledged collateral after the satisfaction of the bank's debt, and it is also alleged by the plaintiff that the trustee had not *surrendered* the stock or the equity to the bank, but had *abandoned* the same. Because of a claimed technical differentiation between the terms *surrendered* and *abandoned,* in their respective legal significance and effect, the plaintiff, contending that it was an abandonment that occurred with respect to the trustee's action, alleges that by reason of such abandonment the title to the stock re-vested in the plaintiff, and that the bank did not have title to the stock when subsequently, on May 6th, 1935, it sold it and applied the proceeds of $11,955.26 toward the note indebtedness. The contention of the plaintiff is without substance.

The collateral note held by the bank provided as follows:

"Upon default of payment when due, of any indebtedness or liability of the undersigned to said holder, said holder is hereby authorized to sell, at any time or times hereafter, and

without any previous demand or notice, the whole or any part of the securities hereby made applicable to the payment thereof, either at broker's board, or at public or private sale, and to apply the proceeds thereof to the payment of such indebtedness or liability, with interest and costs, the undersigned remaining responsible for any deficiency and as to such deficiency, waiving any benefit, exemption, or privilege under any law now or hereafter in force."

Under the above quoted provision the bank always had the right, after default, to sell the collateral. Whether the trustee in bankruptcy "surrendered" or "abandoned" any interest in the stock is immaterial. He never had any real interest in it, or in any other of the collateral pledged, until and unless there should be a balance over and above the plaintiff's indebtedness after sale. The sale did not produce any surplus balance. There was not, therefore, at any time any fund to which the plaintiff was entitled. He never had title to anything but the equity in his stock, whether it was in the bank's hands or the trustee's hands, while the note indebtedness remained unpaid; and the sale which the bank was authorized to make under the terms of its note in order to liquidate the same in whole or in part produced no surplus or equity in cash, and there was therefore no foundation for any judgment in favor of the plaintiff in the action in which the nonsuit was granted. All of this was obvious at the close of the plaintiff's case, and the motion for the nonsuit was therefore properly granted.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 13.

*For reversal*—None.